```
 1                    UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF COLUMBIA
 2
    UNITED STATES OF AMERICA,
 3                                      Criminal Case
                    Plaintiff(s),       No. 23-00016 JEB
 4          v.
                                        Washington, D.C.
 5   FRANK ROCCO GIUSTINO,
                                        November 21, 2023
 6                  Defendant(s).

 7   ----------------------------------------------------------

 8                       SENTENCING HEARING
                 BEFORE THE HONORABLE JAMES E. BOASBERG
 9                 UNITED STATES DISTRICT CHIEF JUDGE

10   APPEARANCES:

11   FOR THE PLAINTIFF(S):   Douglas Collyer, Esquire
                             United States Department of Justice
12                           14 Durkee Street
                             Room 340
13                           Plattsburgh, New York 12901

14

15   FOR THE DEFENDANT(S):   Frank R. Giustino, Pro Se

16

17

18

19   REPORTED BY:            Tammy Nestor, RMR, CRR
                             Official Court Reporter
20                           333 Constitution Avenue Northwest
                             Washington, D.C. 20001
21                           tammy_nestor@dcd.uscourts.gov

22

23

24

25
```

1    The following proceedings began at 11:41 a.m.:

2            THE COURTROOM DEPUTY:  Good morning, everyone.  We are

3    here for sentencing in Criminal Action 23-16, Frank Rocco

4    Giustino versus -- I'm sorry, the United States of America

5    versus Frank Rocco Giustino.

6            Beginning with counsel for the government, please

7    approach the lectern and identify yourself for the record.

8            MR. COLLYER:  Douglas Collyer for the United States.

9    Good morning, Your Honor.

10           THE COURT:  Good morning.

11           All right.  Mr. Giustino, you can come forward and

12   state your appearance.

13           THE DEFENDANT:  Frank Rocco Giustino.

14           THE COURT:  Good morning.

15           THE DEFENDANT:  Good morning.

16           THE COURT:  So are you still intending to represent

17   yourself at sentencing?

18           THE DEFENDANT:  Yes.  I wouldn't mind standby counsel,

19   but I still will be proceeding pro se.

20           THE COURT:  I am happy to appoint you standby counsel

21   if you would like.  Is there anyone in particular you would

22   like as standby counsel?

23           THE DEFENDANT:  Nobody in particular.

24           THE COURT:  So then we should -- I can call the public

25   defender service, the federal public defender, and have them

1    appoint somebody.  So that would continue the sentencing then

2    until next week or so.

3            THE DEFENDANT:  Never mind then.  It's all right.

4            THE COURT:  Are you sure?

5            THE DEFENDANT:  Yes.

6            THE COURT:  Okay.  So I have received the presentence

7    report and the government's submission.  I will hear from the

8    government.

9            And, Mr. Collyer, if you can just -- and if you don't

10   know, Mr. Giustino I'm sure knows -- but when he was arrested,

11   and so how long he's been in jail on this?

12           MR. COLLYER:  Yes, sir.

13           THE COURT:  Okay.

14           MR. COLLYER:  To answer the Court's question up front,

15   I believe he was arrested on or about October 23.

16           THE COURT:  So about a month.

17           MR. COLLYER:  About a month.

18           Your Honor, the events of January 6, 2021 left a stain

19   on the history of this nation.  And each individual participant

20   contributed to the international embarrassment that is the

21   January 6 Capitol riot.

22           I know the Court is aware of what took place that day

23   generally, so I will not belabor it.  The government's

24   sentencing recommendation is based upon actions that

25   Mr. Giustino has taken.

1          The defendant was on the northwest side of the Capitol

2     prior to making his entry into the building where he witnessed

3     at least one altercation between rioters and police officers

4     before he entered the Capitol.

5          Also, before entering the Capitol, he posted on

6     Facebook at 1:42 p.m., quote, Shooting tear gas at us at the

7     Capitol, real nice, civil servants.

8          One of the most important factors in this case is the

9     defendant's aggressive conduct towards Metropolitan Police

10    officers at 2:00 p.m. as they made their way to the Capitol

11    building to assist.  The defendant was yelling in police

12    officers' faces, We don't want to hurt you.

13         Now, what Mr. Giustino said is just as important as

14    what he didn't say.  He did not say we are not going to hurt

15    you.  He said we don't want to hurt you, implicitly stating but

16    we will if you make us.

17         And although there's no evidence the defendant

18    personally engaged in violence on January 6, his words

19    demonstrate that he believed that violence against the police

20    was likely and justified.  And considering that over 100

21    officers were injured that day makes his words frightening and

22    prescient.

23         He also pleaded with the police to stop please,

24    apparently telling the police to accede in the face of the

25    overwhelming number of rioters of which he was one.

1    At 2:13 p.m., the initial violent breach of the
2    Capitol building took place at the Senate wing door.  Just
3    three minutes later, the defendant entered the Capitol through
4    that door making him part of the first wave of rioters in the
5    building.
6         The physical damage from that breach was obvious, and
7    there was an audible alarm ringing that he would have heard as
8    he made entry.  But he did not turn back.  He went forward.
9         By 2:24 p.m. he was in the crypt with a large crowd
10   that worked themselves up by chanting USA.
11        And although he was not at the front of that crowd, he
12   formed part of the critical mass needed for that crowd to
13   overwhelm the line of police officers blocking them in the
14   crypt.  That was the last line of police holding rioters back
15   inside.  Once that line broke, they had unfettered access to
16   the remainder of the building.
17        The defendant went to the small House rotunda and up
18   to the Capitol's second level where he spent the next 17
19   minutes in and around the rotunda area participating in at
20   least one chant and constantly playing on his phone before
21   finally leaving the building.
22        In sum, he spent about 35 minutes inside the Capitol,
23   was part of the mob that stormed the building and the mob that
24   overwhelmed the officers in the crypt.
25        Under 3553(a), the Court must consider the need for

1  the sentence to promote respect for the law and specific

2  deterrence.  The defendant's conduct since his plea of guilty

3  has been disrespectful and belittling to put it mildly.  On a

4  larger scale, it reflects the need for the Court's sentence to

5  address those two factors.

6          The Court was present for the June 23 status

7  conference where the defendant referred to the prosecution as

8  a, quote/unquote, clown show and, quote/unquote, nuisance.

9          But in a September 5, 2023 email to me, he doubled

10 down on those statements.  He referred to January 6 as a,

11 quote/unquote, protest.  He referred to his appearance in court

12 as a, quote/unquote, courtesy apparently bestowed upon him to

13 us.

14         He referred to his prosecution in this matter as,

15 quote, the very definition of terrorism, end quote.

16         He demanded the charges against him be dropped.  He

17 demanded that he be issued an apology.  And he issued a veiled

18 threat when he said, quote, the Department of Defense task

19 force has confirmed that our military is keeping a close eye on

20 the current events, apparently referring to his and other

21 January 6 rioters' prosecutions, and that he, quote, won't be

22 responsible for how the military handles those who commit

23 treason or are involved in seditious conspiracy against me, end

24 quote, apparently referring to himself.

25         He goes on to say that he, quote, wants this,

1  apparently referring to his prosecution, to conclude peacefully

2  between all of us, end quote.  Again, just as on January 6,

3  what he's implicitly stating is that there's the possibility of

4  a non-peaceful conclusion.

5          In August he sent emails to other AUSAs demanding that

6  those AUSAs drop charges against rioters that they were

7  prosecuting.

8          And finally, at the end of September, as the Court is

9  aware, the Court failed to appear for his sentencing here.

10 Make no mistake about it, that nonappearance was intentional

11 and willful.  He made that clear in the status conference when

12 he said there will be no sentencing.  He made that clear in his

13 email to me where he said that he considered the business

14 concluded.

15         The defendant's actions during the riot and since

16 demonstrate that he clearly has no remorse for January 6, he

17 sees himself as a victim, and he sees his attack on democracy

18 and the Capitol as righteous.

19         Earlier this year, I was watching one of the January 6

20 trials.  I can't now remember which one it was.  But I saw the

21 testimony of Kyle Jones.  On January 6, Mr. Jones was an

22 assistant House parliamentarian, and he was on the floor of the

23 House and was one of the last evacuated off the floor.

24         He was asked during his testimony if during the

25 evacuation he thought that they would eventually get back to

counting the votes.  And he couldn't believe the question.  He was taken aback.  He said, Get back to counting the votes?  I didn't think or know if I was going to survive that day, let alone get back to counting votes.

That's the real effect that was had on the real victims of January 6.

The government has filed two prior sentencing recommendations.  The most recent of which asks for 4 months in jail, 36 months probation, the restitution, and community service.  That would amount to a, quote/unquote, split sentence.  And given the circuit's ruling in the Little case, the government is no longer seeking a split sentence in this case.

The government respectfully -- and I would note that the defendant ignoring pretrial services for the last three months and his belief that this matter had prematurely concluded show he wouldn't be amenable to community supervision in any event.

Balancing the factors outlined in 3553(a), the United States respectfully requests this Court sentence Frank Rocco Giustino to 4 months incarceration and the $500 in restitution to which he has agreed.  Thank you.

THE COURT:  Thank you very much, Mr. Collyer.

Mr. Giustino, happy to hear anything you would like to say if you want to come forward.

```
 1            THE DEFENDANT:  Just one moment.
 2            Am I able to enter documents 36, 39, and 59 that are
 3    on record as part of my allocution today?
 4            THE COURT:  That are on the docket, you mean?
 5            THE DEFENDANT:  That are on the docket, yes.
 6            THE COURT:  You don't have to enter them.  If they are
 7    on the docket, they are already entered.
 8            THE DEFENDANT:  All right.  I have a few questions
 9    about the docket itself.  I have been pro se since documents 46
10    and 40 -- I'm sorry, 46 and 59 have been on record, and they
11    have not been responded to.  Is there any reason for that?
12    Because I have been pro se since at least document 46, and I
13    was expecting an answer from the Court since then.
14            THE COURT:  Right.  No.  You can file whatever you
15    want.  These aren't motions, and so there's no response
16    required.
17            THE DEFENDANT:  It's my understanding document 59
18    specifically was supposed to be filed by the clerk of court as
19    a motion, and it wasn't; instead, it was grant to file.  Again,
20    I have been pro se since document 46, and I have been expecting
21    an answer from the Court in some capacity, and I have only
22    received silence.
23            Also, can a bench warrant that was issued allegedly
24    recently be -- a copy given to me that has been signed by the
25    executing officer and dated?  Silvia Irving of the Tampa Bay
```

1   court provided me with the recent bench warrant.  However, it

2   just had a Pacer seal of approval, but it did not have a

3   signature of the executing officer.

4         This also followed a bench warrant affidavit that was

5   misspelled as my name -- that was not my name.  It's spelled

6   G-I-U-S-T-I-O-N instead of N-O, and it has been since lost in

7   my property since I have been incarcerated going from jail to

8   jail.  So I would just like to see the executing copy of the

9   bench warrant so I can ensure its legitimacy.

10        THE COURT:  I issued a bench warrant because you

11  didn't show up for sentencing, as I warned you in great detail

12  at the prior hearing would happen if you didn't show up.  So I

13  issued the warrant.

14        THE DEFENDANT:  Would it be too much of an issue to

15  show me the executing copy, the signed copy?

16        THE COURT:  It has no relevance.

17        THE DEFENDANT:  The bench warrant is sealed on record,

18  so I am just curious as to why the plea and the bench warrant,

19  I believe it's document 60, now has been sealed from record as

20  judicial filings.

21        To my understanding, Judge Jackson was recently quoted

22  in an article talking about how judicial filings such as plea

23  bargains and in this case the bench warrant are typically

24  unsealed by the time of the sentencing.  My last view of the

25  docket as of late shows that they are still sealed.  Is there

1    any explanation why this --

2          THE COURT:  I would be happy to provide you with a

3    copy of the bench warrant.

4          THE DEFENDANT:  Okay.  Signed and executed by the

5    marshal?

6          THE COURT:  I signed it.

7          THE DEFENDANT:  No.  Just to clarify, the signature on

8    the bench warrant of yours is there.  I'm talking about the

9    copy of the bench warrant that has the signature from the

10   executing officer as well.  I have the copy that's only --

11   nobody signed it.  It's blank.  I have it on me right now.

12         THE COURT:  It was executed because you were, in fact,

13   arrested.

14         THE DEFENDANT:  No, I understand what is being said,

15   but I mean, I would just like to see the actual copy of the

16   executing -- just to have as, you know, court of record.

17         THE COURT:  Okay.  So go ahead.

18         THE DEFENDANT:  Yeah.  I first want to say that I

19   condemn all violence on the day of January 6, 2021.  We may all

20   have our differences.  We may all have our different

21   backgrounds and come from different places.  But all violence,

22   I believe, should be something that we should condemn before we

23   have some sort of civil discourse with one another regardless

24   of political views.

25         That day -- and I am going to read my allocution in

1    more detail, but that day, I'm putting this in the forefront

2    because this is obviously the hot button topic of this, I did

3    not want violence.  I did not instigate the police.  I, in

4    fact, tried quelling the violence.

5           Mr. Collyer's document 44 discovery clip that he

6    picked out only shows a segment of the scene of me outside of

7    the Capitol building.  I was not yelling at police.  I had my

8    hands clasped begging for the violence to stop on both ends

9    because I didn't want anyone to get hurt because I'm

10   empathetic.

11          And the phrase I used, we don't want to hurt you, was

12   not a thinly veiled threat, but it was to try to explain to the

13   Capitol Police that were doing their job that the people that

14   were there behind the agitators that day were caught in the

15   cross fire, and I was one of them.

16          So I went up to the very front of the line to actually

17   plead to them that that was happening, to which I then very

18   clearly turned around, and I hope Mr. Collyer saw this in the

19   full footage if he saw the entire exhibit, and I told the

20   agitators, against probably the best interest of my safety, to

21   stand down.  And I told them quite, you know, emotionally.  And

22   I was spit at.  I was called a traitor.  And I was trying to do

23   something that other people were not, which was to try to quell

24   that violence.

25          So that is just a very important discerning factor to

1    make as far as the statements that have been made about me

2    wanting to attack the Capitol, which is not true, or being a

3    part of that.  I just simply got caught up in it and further

4    disoriented, which then led to any other, you know, location I

5    ended up in.  But I just wanted to make that clear.

6              Comes now Frank Rocco of the Giustino family --

7              (There was an interruption by the court reporter.)

8              Comes now Frank Rocco of the Giustino family and

9    redeems Title 12 United States Code, Section 411 allows for

10   them, they shall be redeemed, to make demand and be removed

11   from the national debt special drawing rights, parentheses, SDR

12   in the same sense as the original verbiage at Section 16 of the

13   1913 Federal Reserve Act.

14             THE COURT:  Okay.  I'm going to stop you right there.

15   I can hear -- this is not the time for legal argument about

16   some federal reserve act which has nothing whatsoever to do

17   with this case.  And I'm not going to sit and listen to

18   something that is completely irrelevant.

19             If you want to make an allocution about what you did

20   that day and your position, any remorse you have, your thoughts

21   about it, your thoughts about the sentence, I am happy to hear

22   you, but not anything about a federal reserve act or redeemed

23   people.

24             THE DEFENDANT:  Redeemed people, it's redeeming

25   unlawful money.  It's not some sovereign citizen garbage.  It

1    is redeeming unlawful money on demand pursuant to Title 12

2    United States Code, 411.  It's about endorsing treasury notes

3    over federal reserve notes.

4            THE COURT:  All right.  This case has nothing to do

5    with federal reserve notes.

6            THE DEFENDANT:  It has to do with that there's been a

7    clear violation of 28 United States Code 453 of judges in case

8    USA versus Sino (phonetic) against Frank Giustino by all names

9    and factually with discrepancies in the process that are

10   preventing justice for Frank Rocco rendering the plea bargain

11   vacant and, thus, making a sentencing at trial impossible.

12           The fraudulent written notes of --

13           (There was an interruption by the court reporter.)

14           THE COURT:  Again, do you want to speak about what

15   occurred that day?  If you want to bring another -- you can

16   bring an appeal if you want regarding --

17           THE DEFENDANT:  I have --

18           THE COURT:  -- this case.  Hold on.

19           THE DEFENDANT:  Sorry.

20           THE COURT:  You can if you want to withdraw your plea.

21   I mean, if you think -- if you want to seek -- maybe this is a

22   more fundamental thing.

23           If you don't think your conviction is appropriate or

24   lawful, I don't want to go forward with the sentencing.  If you

25   want to withdraw your plea because you think it's an invalid

```
 1    plea or the prosecution is invalid, I am happy to let you file

 2    that motion and we will just hold off here.

 3            It sounds like what you are doing, you are not talking

 4    about your sentencing, you are attacking the legitimacy of the

 5    proceeding.  So it sounds like you don't think it's a valid

 6    plea.  And if you would like to withdraw that plea, I certainly

 7    would not go forward with sentencing until I resolve that

 8    question.

 9            THE DEFENDANT:  I do not want to withdraw the plea,

10    but what I do want is to go home and I want to take time

11    served.  I do not believe I deserve the second sentencing

12    memorandum that the government has brought forth.

13            If you look at document 48, the main argument that the

14    government is making for increasing jail time from 21 days

15    incarceration to 4 months is simply for questioning authority.

16            I think that if this is the precedent that --

17            THE COURT:  Hold on.  One thing the government pointed

18    out was that your conduct in the last hearing was as offensive

19    and inappropriate conduct as I have had in a January 6 hearing

20    so far in these prosecutions, your lack of respect for the

21    Court, for the government.  I mean, the government's quoted

22    things that you said in emails to him.  They haven't quoted the

23    cursing and other statements you made during that hearing which

24    I could have found you in contempt of court for they were so

25    inappropriate.
```

1          And so it seems to me, based on what the government is

2     saying in that memorandum, is that you have no remorse

3     whatsoever for what you did or any respect for what's happening

4     here.  And that seems to me perfectly valid for them to make.

5          THE DEFENDANT:  So the moment that the government

6     mentioned remorse, which was halfway through that 6/23/23

7     status conference, the only thing that I have done from the

8     beginning of that conference to the point that apparently I had

9     no remorse -- which makes no sense to me because if we were to

10    read back in that transcript, it shows that I was simply

11    questioning the jurisdiction and authority of the Court.  I was

12    looking for answers.  Instead, I did not receive any answers.

13         I asked you, Mr. Boasberg, why your oath of office, I

14    believe, had an issue and why that was the case, why it was not

15    accorded Title 18 United States Code, Section 453, and I

16    received silence.  And it wasn't to create disharmony between

17    us as people or our positions in this court.  It was a -- you

18    want to say a plea or a cry even to get some sort of answers

19    after having a prosecution that involved a court-appointed

20    attorney who did not do his job on my behalf.  The plea bargain

21    has typos with the dates.  He ignored me.  This is Evan Sugar.

22    He ignored me for five weeks.

23         THE COURT:  Hold on.  So either -- as I said, I just

24    want to make sure.  Do you wish to withdraw your plea because

25    you didn't receive correct -- you didn't receive effective

1    assistance of counsel or correct advice or the prosecution was

2    somehow flawed?  I want to make sure here before we go forward

3    that --

4         THE DEFENDANT:  The only reason I would want to

5    withdraw the plea is if the entire case was dismissed.  If the

6    case is not being dismissed, then I do not want to withdraw the

7    plea.

8         THE COURT:  All right.  So if you don't want to

9    withdraw the plea, let's talk about -- anything else you want

10   to talk about regarding sentencing, I am happy to hear, not

11   legal argument regarding the case, but sentencing.  Tell me

12   what else you would like to say about sentencing.

13        THE DEFENDANT:  I would like to say that I believe I

14   should be released on time served based on the original

15   memorandum and over the fact that my own attorney was not doing

16   his job and over the fact that having no remorse, which is

17   untrue, has nothing to do with asking authority of a court.

18        And again, going back to the transcript, there was

19   nothing up until the comment made that I have no remorse that

20   warranted me having no remorse or being seen as having no

21   remorse simply because I believed there was a jurisdictional

22   issue that was not being answered to.

23        So my partaking on January 6, which I have made clear

24   in the beginning of my speaking today, is being misconstrued,

25   and I very much am empathetic towards the people of D.C.  I

1    have been here for a little bit of time now, and they are very

2    nice, to be quite honest.  They have been only kind to me.  And

3    they do not deserve to have terror put into their hearts no

4    matter -- you know, by anyone.

5            So that was never my intention to attend that day was

6    to scare anybody.  And nobody deserves to be scared like that.

7    Nobody deserves to be hurt.  And that's why I believe I would

8    like to be released with time served.

9            I realize that I was in the wrong place at the wrong

10   time, and I would like to just go back home to my family

11   because they love me very much, and this is not somewhere I

12   believe I belong.

13           But I just want to make sure that it's okay for me as

14   an American with constitutional rights to feel safe enough to

15   ask about jurisdictional issues without feeling like I am doing

16   something wrong or doing something un-American by doing that.

17           And again, it's no disrespect.  It's just that I feel

18   that transparency between our civil servants -- which is not

19   supposed to be condescending.  It's supposed to be an honor, to

20   be quite honest, to be a civil servant.

21           I just -- that's all I wanted.  I just wanted

22   transparency from the Court.  And if you would ever want to

23   read the allocution document 59, there's a 20-page letter that

24   is within that filing that shows my original filing that was

25   not filed because Sugar said he would face sanctions if he

1   filed it.  And I say with genuine respect, I just ask for an

2   oath of office as a fidelity bond, as a trust bond, so I felt

3   safe going into a plea bargain in cases that are clearly highly

4   politicized.

5          And me, having no prior record, you know, never have

6   been in any altercation with law or any arrests, I have family

7   that has actually served, that was simply my purest intention

8   for you, Mr. Boasberg.

9          So that's why I believe that I should be, if not

10  dismissed, I should be released with time served.  I have

11  learned my lesson as far as not to get involved with drama.

12         And even to Mr. Collyer here, I do apologize for

13  cursing at you.  I really mean that.  I am looking him in the

14  eyes right now saying that.

15         So I just want to go home.

16         THE COURT:  Okay.  Thank you very much.  You may have

17  a seat.

18         All right.  Again, as I have said in all of these

19  sentencings on January 6 cases, the hallmark of a democracy is

20  the peaceful transfer of power.  And on January 6, a mob

21  determined that what happened at the ballot could not stand and

22  that, instead, they would effect their will by force to install

23  or to retain in government the president who had lost an

24  election and had a duty to step down in favor of his successor

25  who had lawfully won a fair election.

And you were part of that mob.  And there were a lot
of people in that mob who did a variety of things.  And you
were on the lower end of the spectrum in terms of the violence
of your conduct.

I have sentenced people to multiple years in prison
who pepper-sprayed officers, who brought guns to the event, who
struck officers with flagpoles, who knocked officers down, who
threw weapons at officers, who incited others, who broke
through barricades.

And on the spectrum of conduct, yours is certainly on
the lower end.  And that's why, instead of being charged with
felonies or even multiple misdemeanors, you are charged with
one misdemeanor here.  And that has a maximum of six months.

Now, I consider the conduct that you committed, as the
government explained clearly, and I also have to consider
deterrence, whether you or others would engage in this kind of
conduct again.

In considering that, I also consider remorse and
acceptance of responsibility.  And as I mentioned earlier, your
behavior from the moment of the plea until sentencing has been
about the worst of any January 6 defendant I have had.

You are the only person who didn't show up for
sentencing even though I warned you specifically and clearly
that if you didn't show up for sentencing, I would issue a
bench warrant and I would sentence you more harshly.  But you

cavalierly never showed up for sentencing.  And you sent the
government emails saying things that showed no remorse.

Your conduct in that hearing, as I mentioned, was the
most disrespectful appearance of any defendant in a hearing
that I have had on January 6.  And only at the end of your
allocution today do I finally hear anything that sounds like
remorse in your apology to the prosecutor and your acceptance
of responsibility.

But it's hard for me to take that at face value given
what I have seen over the last few months and even today.
Maybe it's legitimate.  I hope it's legitimate.  I hope it is.
Because you are a very young man, Mr. Giustino, with a long
life to lead that I hope you can lead as a responsible citizen,
as a contributing member of society.  You are obviously an
intelligent and able person, and I hope you are going to do
that.

I am going to give you a 90-day sentence.  I just
don't see how I can give less than that given what's occurred
here.  But I, as the government points out, I can't give a
split sentence, so it's just a sentence of that length.

So on Count 4, I sentence the defendant to 90 days in
prison with credit for time served.  So in other words, you get
credit for the 30-ish days you have already served.

I also order restitution in the amount of $500.  And
there's a special assessment of $10 that I am required to

```
1    impose because it's a misdemeanor.

2            I will not impose any fine because I find that you do

3    not have the financial ability to pay any fine.

4            You do have the right to appeal this conviction if you

5    believe that the guilty plea was unlawful or involuntary or

6    there's some other defect in the proceeding or if I have

7    sentenced you to an inappropriate sentence or if you received

8    ineffective assistance of counsel pursuant to the plea.

9            If you wish to appeal, you must file an appeal within

10   14 days after the entry of judgment.  If you are unable to

11   afford the cost of appeal, you may request permission from me

12   to file without cost.  You may also apply for court-appointed

13   counsel if you wish to file an appeal.

14           Do you understand all of that?

15           THE DEFENDANT:  Can I ask one thing?

16           THE COURT:  Sure.

17           THE DEFENDANT:  Something I failed to mention is that

18   I have been dealing with some health issues for some time.

19           THE COURT:  And I read about those in the presentence

20   report.

21           THE DEFENDANT:  Yes.  Instead of -- I have done time

22   served, and I hear you on the 90 days.  Is there any way we

23   could move that incarceration, those days, to home detention

24   where I could be within safekeeping --

25           THE COURT:  No.
```

```
 1              THE DEFENDANT:  -- because I have not received always
 2    the best medical help?
 3              THE COURT:  I'm sorry to hear that.  Unfortunately
 4    that is sometimes the case.  But I hope that you will -- are
 5    you at CTF now, or are you at the jail?
 6              THE DEFENDANT:  I'm supposed to be transferred to CTF.
 7    I'm awaiting CTF.
 8              THE COURT:  I imagine you'll receive better medical
 9    care at that facility.
10              Any objection to the sentence imposed not already on
11    the record, Mr. Collyer?
12              MR. COLLYER:  No, sir.
13              THE COURT:  Mr. Giustino, anything further?
14              THE DEFENDANT:  Any objection?
15              THE COURT:  Yes, beyond what's already on the record.
16              THE DEFENDANT:  Can I enter as no contendo (sic)?
17              THE COURT:  I am not sure what that means in this
18    circumstance, but if you wish to say that, that's fine.
19              THE DEFENDANT:  Yes, no contendo.
20              THE COURT:  All right.  Thank you.
21              Mr. Giustino, when you get out, good luck to you.  I
22    am hoping that you are going to return to your law-abiding path
23    prior to January 6.  Thank you.
24              THE COURTROOM DEPUTY:  Your Honor, remaining counts
25    from the government?
```

1          MR. COLLYER:  Your Honor, the government moves to

2    dismiss Counts 1 through 3 of the information.

3          THE COURT:  They are dismissed.

4          Thank you all.

5          (The hearing concluded at 12:17 p.m.)

6                          - - -

7                    C E R T I F I C A T E

8

9          I hereby certify that the foregoing is an

10   accurate transcription of the proceedings in the

11   above-entitled matter.

12

13

14   11/30/23              s/ Tammy Nestor
                           Tammy Nestor, RMR, CRR
15                         Official Court Reporter
                           333 Constitution Avenue NW
16                         Washington, D.C. 20001
                           tammy_nestor@dcd.uscourts.gov

17

18

19

20

21

22

23

24

25